

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

FILED
SEP 15 2008
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>JEREMY CHRISTOPHER DUNN,<br><br>          Debtor.<br>_____ | Case No. 08-90167-D-7 |
| JEREMY CHRISTOPHER DUNN,<br><br>          Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA, FRANCHISE TAX BOARD,<br><br>          Defendant.<br>_____ | Adv. Pro. No. 08-9020-D<br><br>Docket Control No. JO-1 |

**MEMORANDUM DECISION**

On August 5, 2008, Defendant State of California, Franchise Tax Board ("FTB") filed a motion for summary judgment, bearing Docket Control No. JO-1 (the "Motion"). For the reasons set forth below, the Motion will be granted in part.

**I. INTRODUCTION**

On February 7, 2008, Plaintiff Jeremy Christopher Dunn ("the debtor") filed a petition for relief under chapter 7 of the

/ / /

/ / /

/ / /

Bankruptcy Code.[1]  On May 13, 2008, the debtor received a bankruptcy discharge.

On March 19, 2008, the debtor initiated this adversary proceeding, in which he seeks a determination that his state income taxes for the tax years 2000 through 2003 are dischargeable.  On August 5, 2008, the FTB filed the Motion, along with a memorandum of points and authorities, a declaration of Faith Linkin, a Compliance Representative in the Bankruptcy Section of the FTB, and as required by Local Bankruptcy Rule 7056-1(a), a separate statement of undisputed facts.

On August 19, 2008, the debtor filed a memorandum of points and authorities in opposition to the Motion ("the Opposition"), together with a declaration of Jeremy Dunn (the debtor), a statement of disputed facts, and a response to the FTB's statement of undisputed facts.  On August 25, 2008, the FTB filed a memorandum of points and authorities in reply to the debtor's opposition ("the Reply"), a response to the debtor's statement of disputed facts, and an objection to the declaration of Jeremy Dunn.

On September 3, 2008, the Motion came before the court for hearing, counsel appeared and presented oral argument, and the matter was submitted.

/ / /

---

1.  Unless otherwise indicated, all Code, chapter, section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated after the effective date (October 17, 2005) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005).

The Motion presents three issues: first, whether there is a justiciable case or controversy as to the dischargeability of the debtor's tax debts to the FTB for tax years 2000, 2001, and 2002, and if so, whether there is any genuine issue of material fact on that issue; second, whether there is any genuine issue of material fact as to the dischargeability of the debtor's tax debt for tax year 2003; and third, whether there is any genuine issue of material fact as to the dischargeability of the debtor's liability for any post-petition assessments related to tax years 2000 through 2003.

## II. ANALYSIS

This court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). The Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

### A. Standards on Motion for Summary Judgment

The Motion invokes Federal Rule of Civil Procedure 56(c), made applicable in this proceeding by Federal Rule of Bankruptcy Procedure 7056. Where a motion for summary judgment is before the court, the court is to render judgment for the moving party where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of producing evidence showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986).

/ / /

Once the moving party has met its initial burden, the non-moving party must show specific facts showing the existence of genuine issues of fact for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). Under Rule 56, the court also has authority to make an order specifying what material facts are not genuinely at issue, and such facts will then be treated as established in the action. Fed. R. Civ. P. 56(d)(1).

<u>B. Dischargeability of Tax Debts in Chapter 7</u>

The Motion concerns the interplay between 11 U.S.C. §§ 523(a)(1) and 507(a)(8). Under the former, certain tax debts are nondischargeable in chapter 7; namely, taxes of the kind and for the periods specified in § 507(a)(8) (§ 523(a)(1)(A)), taxes for which a return either was not filed or was filed late and within the two-year period prior to the bankruptcy filing (§ 523(a)(1)(B)), and taxes with respect to which the debtor filed a false return or taxes which the debtor willfully attempted to evade or defeat (§ 523(a)(1)(C)).

As indicated, § 523(a)(1)(A) refers back to § 507(a)(8). Under the latter section, certain income taxes have priority in bankruptcy cases -- taxes for which a return was last due, including extensions, within the three years prior to the bankruptcy filing (§ 507(a)(8)(A)(i)), taxes assessed within the 240 days prior to the bankruptcy filing (with additional considerations in the event of an offer in compromise) (§ 507(a)(8)(A)(ii)), and taxes, other than those of a kind specified in § 523(a)(1)(B) or (C), not assessed before but

assessable after the commencement of the case.
(§ 507(a)(8)(A)(iii)).

C. 2000, 2001, and 2002 Tax Debts - Justiciability

The FTB, citing Mlincek v. United States (In re Mlincek), 350 B.R. 764 (Bankr. N.D. Ohio 2006), argues that it "does not currently contend that Debtor owes anything related to the 2000 through 2002 tax years," and therefore, that "there is no case or controversy relating to those tax years and the Court lacks jurisdiction to make any determination related thereto." Points and authorities in support of Motion, 3:1-3.

In Mlincek, the court dismissed the debtor's complaint to determine dischargeability of tax debts, finding no presently justiciable controversy. 350 B.R. at 769, 770. The case is distinguishable from the one before this court. In Mlincek, the Internal Revenue Service had not asserted that any obligation of the debtors was nondischargeable under § 523(a)(1)(A) or (B). The IRS had also stated that it had no present intention to seek a nondischargeability determination under §523(a)(1)(C), and that it had no reason to believe the debtors had made any attempt to evade or defeat their tax obligations.

In the case before this court, the FTB is not as unequivocal as the IRS was in Mlincek. The FTB states that it "presently does not contend that Debtor owes it anything related to the 2000, 2001 and 2002 tax years" (Reply, at 1:28-2:1), but also that it "does not presently intend to reassess the discharged

/ / /
/ / /
/ / /

liabilities." Reply, 2:13-14.² The court concludes that the debtor's concerns are not unfounded, as the FTB contends, but rather, that the issue is ripe for determination.

Several courts have found a justiciable case or controversy, for purposes of determining the dischargeability of taxes even before a discharge has been entered. In each of these cases, the IRS contended that there would be no case or controversy until the debtor (in each case, either a chapter 12 or chapter 13 debtor) had completed his or her plan and received a discharge. The courts disagreed. See Malin v. IRS (In re Malin), 356 B.R. 535, 539 (Bankr. D. Kan. 2006); Swanson v. IRS (In re Swanson), 343 B.R. 678, 683 (Bankr. D. Kan. 2006); Craine v. United States (In re Craine), 206 B.R. 598, 601 (Bankr. M.D. Fla. 1997); Clavelle v. United States, 1994 U.S. Dist. LEXIS 18203, * 2-3 (W.D. La. 1994).

The various policy issues are explored in detail in Nixon v. United States (In re Nixon), 2007 Bankr. LEXIS 1536 (Bankr. N.D. W.Va. 2007). Obviously, the chapter 12 and chapter 13 plan concerns are not in play in this case, but several other factors are relevant here. First, "all the factual predicates necessary for a determination of whether the tax claim would be subject to discharge have already occurred, which is an 'indicator of the fitness of the issue for judicial consideration.'" Nixon, 2007 Bankr. LEXIS 1536 * 17, citing Malin, 356 B.R. at 539.

---

2.  In the next breath, the FTB appears to acknowledge that it could not reassess discharged liabilities. Reply, 2:16-19. How is that acknowledgment reconciled with the previous comment that the FTB does not presently intend to reassess the discharged liabilities?

Second, in balancing the hardships, the Nixon court found no hardship to the IRS from having "an advance determination" of the dischargeability issue, whereas the delay from postponing the decision might leave the debtor owing additional penalties and interest. 2007 Bankr. LEXIS 1536 * 18.

Third, the court noted as a basic consideration that Fed. R. Bankr. P. 4007(b) permits the filing of this type of complaint at any time. 2007 Bankr. LEXIS 1536 * 15-16.

Ironically, in this case, the FTB does not assert lack of justiciability with respect to post-petition assessments it might make related to the 2000 through 2003 tax years. Instead, it seeks a judgment that "any post-petition assessments related to the 2000 through 2003 tax years will not be discharged by the discharge in this case." Motion, at 4:1-4. In other words, the FTB seeks an immediate determination of nondischargeability with respect to taxes not yet assessed (and which might never be assessed), but wants to defer consideration of the dischargeability of taxes already assessed. The court concludes that both issues present justiciable controversies.

Having determined that the debtor's liabilities for tax years 2000, 2001, and 2002 are ripe for determination, the court will next consider whether there is any genuine issue of material fact as to those liabilities that would preclude summary judgment. The FTB states that the debtor's balance due for the 2000 tax year has been paid in full, and that it has discharged the debtor's balances due for 2001 and 2002 as a result of the

/ / /

/ / /

debtor's bankruptcy discharge in this case.[3] Although the FTB states that it "does not presently intend to reassess the discharged liabilities" (Reply, 2:13-14), it also appears to acknowledge that it could not do so (Reply, 2:16-19).

Thus, with respect to the debtor's liabilities for tax years 2000, 2001, and 2002, other than any such liabilities not assessed before but properly assessable after the commencement of this bankruptcy case,[4] the court finds no genuine issue of material fact, and thus, concludes that such liabilities are dischargeable by operation of the debtor's discharge in this case. Pursuant to Fed. R. Civ. P. 56(d)(1), and the court's order on the Motion, that fact will be treated as established in this action.

D. Dischargeability of 2003 Taxes

Citing § 523(a)(1)(B)(i), the FTB seeks a determination that the debtor's tax debt for tax year 2003, and interest thereon, is not dischargeable in this bankruptcy case, because the debtor has never filed a return for that tax year. The contention is supported by the testimony of Faith Linkin that "FTB records indicate that Debtor has not filed his California income tax return for the 2003 tax year."[5] The debtor counters that he did file a return, testifying that his federal and state returns for 2003 "were mailed to the addresses indicated in [his CPA's] cover

---

3. Declaration of Faith Linkin, filed August 5, 2008, ¶¶ 7, 11, 15.

4. See discussion in section II(E), below.

5. Declaration of Faith Linkin, ¶ 21.

letter in envelopes provided by [his] CPA" shortly after June 11, 2004.⁶

More than three and one-half years passed between June of 2004 and the date of the debtor's bankruptcy filing, February 7, 2008; thus, if the return was filed when the debtor claims it was, it easily passes the two-year test of § 523(a)(1)(B)(ii).

The question, then, is whether the return was actually filed, or more properly on this motion for summary judgment, whether there exists a genuine issue of material fact as to the filing of the return. First, the FTB's objection to the debtor's declaration is overruled. That the debtor did not specifically state that he personally mailed the return, that it had proper postage, or that it was mailed on any particular date goes to the weight of his testimony, not its admissibility.⁷

Second, in the Ninth Circuit, under the "mail box rule," "[p]roper and timely mailing of a document raises a rebuttable presumption that the document has been timely received by the addressee." Lewis v. United States, 144 F.3d 1220, 1222 (9th Cir. 1998); see also In re Bucknum, 951 F.2d 204, 207 (9th Cir. 1991) ["Mail that is properly addressed, stamped and deposited into the mails is presumed to be received by the addressee."].

---

6.  Declaration of Jeremy Dunn, filed August 19, 2008, ¶ 3.

7.  The FTB also argues that the unsigned copy of the return filed by the debtor as an exhibit "is not a return." Although the debtor's declaration is drafted in such a way that the copy purports to be "the State and Federal income tax returns for 2003 . . . ." (Dunn declaration, 2:2-4), the court recognizes the copy for what it is intended to be -- a copy of the original return. The court believes it is not uncommon for a taxpayer to sign and mail an original return, retaining only the copy marked by his or her tax preparer with a "COPY" stamp in the signature block.

The cases cited by the FTB, <u>Bear Creek Master Assn. v. Edwards</u>, 130 Cal. App. 4th 1470 (2005) and <u>Jensen v. Traders & General Ins. Co.</u>, 141 Cal. App. 2d 162 (1956), stand only for the proposition that a presumption of receipt may be rebutted by testimony denying receipt. Thus, Ms. Linkin's testimony arguably rebuts the presumption raised by the debtor's testimony. However, "'"if the adverse party denies receipt, the presumption is gone from the case. The trier of fact must then weigh the denial of receipt against the inference of receipt arising from proof of mailing and decide whether or not the letter was received."'" <u>Bear Creek Master Assn.</u>, 130 Cal. App. 4th at 1486, quoting <u>Craig v. Brown & Root</u>, 84 Cal. App. 4th 416, 421-22 (2000). Thus, the conflicting declarations in this case raise a genuine issue of material fact, going directly to the issue of dischargeability of the 2003 taxes, and therefore, summary judgment would be inappropriate.

<u>E. Dischargeability of Taxes Assessable Post-Petition</u>

Finally, the FTB argues that any tax obligations arising on account of post-petition assessments by the FTB will not be discharged by the debtor's discharge in this case.[8] To the extent such taxes were not assessed before the bankruptcy filing, but are properly assessable after the filing, the FTB is correct. §§ 523(a)(1)(A) and 507(a)(8)(A)(iii); <u>Franchise Tax Bd. v. Bracey (In re Bracey)</u>, 77 F.3d 294, 295 (1996); <u>Vitaliano v.</u>

/ / /

---

8. In its Reply, the FTB asserts for the first time that the court should not rule on this issue because there is no justiciable case or controversy. This is plainly contrary to the position the FTB advanced in the Motion.

California Franchise Tax Bd. (In re Vitaliano), 178 B.R. 205, 208, 209 (9th Cir. BAP 1995).[9]

The court declines the debtor's invitation to follow In re Doss, 42 B.R. 749 (Bankr. E.D. Ark. 1984), rather than Vitaliano. The court agrees with the Bankruptcy Appellate Panel in Vitaliano that Doss "involves a very dubious reading of the Bankruptcy Code." 178 B.R. at 208. The court also disagrees with the debtor's attempt to distinguish Vitaliano on the basis that Vitaliano dealt with timely-filed returns, whereas the debtor's return in this case was filed late. Such a conclusion is not supported by the statutory language; additionally, it would reward a debtor for filing a late return while penalizing, under Vitaliano, one who files on time.

As a fall-back position, the debtor argues that even if Vitaliano governs this case, it is too late under California law for the FTB to assess further tax liability for tax years 2000, 2001, and 2002. The statute of limitations, in general, for the mailing by the FTB of a notice of proposed deficiency assessment is four years after the return was filed. Citing Rev. & Tax. Code § 19057(a), the debtor argues that because his 2000, 2001, and 2002 returns were filed on or before October 15, 2003

---

9. At the hearing on the Motion, the debtor's counsel attempted to distinguish Bracey, arguing that there, the hearing to determine dischargeability occurred after the assessment had been made, whereas here, the FTB merely seeks to preserve its right to make further assessments. The argument seems akin to the FTB's position that the dischargeability of the debtor's 2000, 2001, and 2002 taxes is not ripe for determination. The debtor's attempt to distinguish Bracey fails. As indicated above, Bracey is very clear that a tax deficiency not assessed pre-petition but assessable post-petition is non-dischargeable under §§ 523(a)(1)(A) and § 507(a)(8)(A)(iii).

(declaration of Faith Linkin), more than four years before his bankruptcy filing, further liability for those tax years was no longer assessable post-petition.

However, there are exceptions to the four-year statute of limitations. See Rev. & Tax. Code § 19057(a) [false or fraudulent return]; § 19058(a) [six years where taxpayer omits an amount of includable gross income in excess of 25% of the amount of stated gross income]; § 19059 [taxpayer reporting to FTB a change or correction by the IRS]; § 19060(a) [no statute of limitations where taxpayer fails to report a change or correction by the IRS].

The debtor suggests that because he has obtained a default judgment against the IRS in Adv. No. 08-9021-D, "there can be no valid corrections of the federal tax returns for any of the four years," and thus, there are no liabilities that could be assessable post-petition. Opposition, 6:2-15. First, the court does not know whether corrections were made by the IRS prior to entry of the judgment. Second, the court is unable to conclude that a judgment of dischargeability necessarily precludes the making of changes or corrections to a tax return. Third, the court doubts whether a default judgment against the IRS in an action to which the FTB was not a party affects the FTB's ability to make assessments. And finally, as indicated above, IRS changes and corrections are not the only basis for FTB assessments. In short, the court cannot conclude that the FTB can make no post-petition assessments with regard to the tax years in question.

/ / /

It is possible the FTB will attempt to assess against the debtor an obligation on which the statute of limitations for assessment has expired. If so, the debtor may raise the issue at that time in the appropriate court.

In the meantime, in conclusion, the court rejects the debtor's suggestion that "if the tax liability [for 2000, 2001, and 2002] is discharged that would seem to bar the deficiency assessment as well." Opposition, 3:9-11. The argument fails to distinguish a liability based on a deficiency assessment from a liability disclosed by a tax return. The latter may be dischargeable by virtue of meeting the tests of § 523(a)(1), while the latter, albeit for the same tax year, may remain assessable under state law, and therefore, nondischargeable under § 523(a)(1)(A) and 507(a)(8)(A)(iii).[10]

### III. CONCLUSION

For the reasons set forth above, the court finds, first, that there is a justiciable case or controversy as to the dischargeability of the debtor's tax debts to the FTB for tax years 2000, 2001, and 2002, and with respect to the debtor's liabilities for those tax years, the court finds no genuine issue of material fact; second, that there exists a genuine issue of material fact as to the dischargeability of the debtor's debt for

---

10. The court agrees with the debtor that not all priority tax debts are nondischargeable, and not all nondischargeable tax claims have priority for purposes of distribution from a bankruptcy estate. Judge Klein made a thorough and cogent analysis of the issue in his opinion in Savaria v. United States (In re Savaria), 317 B.R. 395, 398 (9th Cir. BAP 2004). However, the debtor's attempt to find a distinction in the absence of a specified time period in § 507(a)(8)(A)(iii) is unsupported and misses the mark.

tax year 2003, which precludes summary judgment; and third, that there is no genuine issue of material fact as to the dischargeability of the debtor's liability for any post-petition assessments related to tax years 2000 through 2003.

The court concludes that, with respect to the debtor's liabilities for tax years 2000, 2001, and 2002, other than any such liabilities not assessed before but properly assessable after the commencement of this bankruptcy case, such liabilities are dischargeable by operation of the debtor's discharge in this case. The court further concludes that, with respect to any post-petition assessments by the FTB, for any tax year, to the extent such taxes were not assessed before the bankruptcy filing, but are properly assessable after the filing, such taxes and interest thereon[11] are not dischargeable in this bankruptcy case.

The court will issue an appropriate order.

Dated: September 15, 2008

_Robert Bardwil_
ROBERT S. BARDWIL
United States Bankruptcy Judge

---

11. See Ward v. Board of Equalization (In re Artisan Woodworkers), 204 F.3d 888, 891-92 (9th Cir. 2000).

| | |
|---|---|
| 1 | **CERTIFICATE OF MAILING** |

I, Andrea Lovgren, in the performance of my duties as assistant to the Honorable Robert S. Bardwil, mailed by ordinary mail a true copy of the attached document to each of the parties listed below:

<u>Attorney for Plaintiff</u>

Ronald Holmes
102 Hidden Glen Dr., #160
Auburn, CA 95603

<u>Attorney for Defendant</u>

Jane O'Donnell
P.O. Box 944255
Sacramento, CA 94244

DATE: September 15, 2008

_____
Andrea Lovgren